BRIDGES v. YELLOW SPRINGS COLLEGE.

*Appeal from Des 'Moines District Court — Thursday, January 25.*

SCHOLARSHIP NOTES : DEFENSES THERETO, &C., &C.

THE defendant is a body corporate, for educational purposes, organized in 1852, under the general incorporation laws of the State, and located in Yellow Spring Township, Des Moines County, Iowa. It has power, by its articles, to contract, to acquire and dispose of property, to sue and be sued, &c., &c. It is provided that the corporate concerns shall be conducted by a board of trustees. The articles contain no provisions in relation to the sale of scholarships, or the nature of the fund arising therefrom, or the disposition to be made thereof.

The college went into operation soon after its inauguration. On the 6th day of December, 1855, the board of trustees adopted the following:

"*Resolved*, That the board establish scholarships of $200 each, to be paid in five years, with interest at ten per cent per annum, until the principal is paid; interest payable annually to the treasurer or agent of the board, which shall entitle the holder to send one scholar perpetually to this college."

One Smead was appointed an agent of the college to dispose of scholarships among the people, to those favorably disposed toward the enterprise. He entered upon his duties, and there is evidence to show that he represented publicly and specially, that the institution might be considered permanently established if they could get a certain number of persons to subscribe for scholarships at $200 each, payable in installments; that a scholarship would entitle a subscriber to send one student forever, free of charge; that the money so raised would be kept as a separate and distinct fund, *the principal of which would not be used*, and the *interest alone applied toward the payment of teachers, &c., &c.;* that the subscribers need not pay the principal so long as they were solvent and promptly paid the interest. It is not established that he was authorized thus to represent by the board, nor that the board knew he was making these representations; the

contrary rather is shown by the evidence. The present plaintiff executed and delivered to Smead, at the date thereof, the following note:

"YELLOW SPRINGS COLLEGE, November 4, 1856.
"For value received, I promise to pay to the treasurer of Yellow Springs College, Iowa, *two hundred dollars*, in four equal annual payments, the first payment to be made on the 1st day of January, 1858.
(Signed) "SOLOMON BRIDGES."

(Interest was paid on this note down to January 1, 1861.)

At the time of executing the above note, and in exchange therefor, the plaintiff received the following,

"CERTIFICATE OF SCHOLARSHIP.

"YELLOW SPRINGS COLLEGE, Nov. 4, 1856.
"Whereas, Solomon Bridges, of, &c., has this day executed his note [describing the above note]: This is to certify, that if the said S. Bridges shall well and truly comply with the obligations of said note, then and in that case the said Bridges, or his heirs or assigns, shall have the privilege of sending one scholar at a time, free of tuition, to the said college, perpetually, to be subject to the rules of the college as other students.
"By order of the Board of Trustees.
(Signed) "SAMUEL K. SMEAD,
"Agent of Yellow Springs College."

At the January Term, 1864, of the Des Moines District Court, the college having brought action on said note, *recovered judgment* thereon against the present plaintiff, Bridges, for $236.50.

Bridges soon after commenced the present suit in chancery, reciting the facts hereinbefore set out, and claiming that the moneys subscribed for scholarships were to constitute a distinct fund, the principal of which could not be used, but the interest only, and that for the sole purpose of paying teachers and other running expenses of the institution; also claiming that the college has, for about two years, ceased to perform its functions, and is not now in operation. It is also alleged that the officers of the college have committed *breaches of trust*, by using the principal of moneys collected and received on scholarship notes to pay the ordinary and general expenses or debts.

Prayer, that the college be required to answer and disclose who subscribed to said fund, who have paid and who not; that the scholarship owners be made parties (which was not done); that persons receiving parts of said fund, with notice, be required to account therefor; that the court wind up the fund; that a preliminary injunction may issue, restraining the collection of the judgment, and that the same may become final, and for general relief.

The answer denies the authority of Smead to make the alleged representations; avers that his only authority was to issue the certificates

of scholarship, and receive the notes therefor; that these constitute the only contract between the parties; denies the trust character of the scholarship notes and fund, or their misapplication; and alleges that the suspension of the college was only temporary, caused by the withdrawal of young men by the war.

The cause was tried by the first method, upon the pleadings, exhibits and testimony, all of which are in the record. Upon final hearing, the District Court dissolved the injunction and dismissed the petition. Plaintiff appeals.

*J. C. & B. J. Hall* for the plaintiff.

*J. Tracy* for the college.

DILLON, J. — I. It is not established by the testimony that the college corporation has been dissolved, or has wholly ceased to exist. It may be, as claimed by the plaintiff, *in articulo mortis ;* but it is not dead. We have no occasion, therefore, to determine what would be the plaintiff's rights in equity or at law, if the corporation were no longer *in esse.* In that event it might be (subject to the rights of creditors) that the unpaid scholarship notes could not be enforced; or, if paid, it might be that the scholarship holder would have his action for a breach of the promise contained in the certificate of scholarship, viz. (in substance), to educate, free of tuition, any scholar which may be presented or sent by such holder.

II. The petition in this case is not upon the theory that the note was obtained from the plaintiff by the false and unauthorized representations of Smead (the agent of the defendant), to the effect that the scholarship notes were to be and remain a distinct and separate trust fund, of which the interest only could be used. The college, in this suit, deny that such was the fact, and deny that Smead had any authority so to represent. Yet, if he did so represent, and it was false, and such representation constituted the material and operative inducement to the plaintiff to execute the note and take the scholarship, these and similar facts are of a nature to have been available to the plaintiff by way of defense to the action upon the note; and no reason is given why the plaintiff did not, in that action, if he was defrauded by the agent, defend upon that ground. These same facts might, perhaps, be the basis (if judgment on the note had not passed against the plaintiff) for an application, on tendering back the scholarship note, to rescind the contract.

But such is not the nature of the present action. The plaintiff does not, in his petition, seek to be relieved on the grounds of fraud, nor state any reason why he did not make this defense when sued on the

note. Nor does the plaintiff ask a rescission of the contract. But his petition is bottomed upon the proposition, that he entered into a *valid contract* with the college, through an authorized agent, by which the amount of his and other similar notes were to be and remain a *trust fund*, the principal of which was to be kept intact and inviolate; that the trustees have abused the trust by misapplying the fund, and that he, upon payment, has the right to invoke the aid of a court of chancery, in virtue of its jurisdiction over trust and their administration, to compel the trustee to observe the trust and carry out the contract.

But, in this view of the plaintiff's case, the difficulty is, that the testimony does not sustain it. The clear weight of the evidence is, that the agent of the college, with whom the plaintiff dealt, was not authorized to make the contract which the plaintiff claims he did make, and which he seeks to have enforced.

The only contract which the college authorized was that which was evidenced by the note and the certificate of scholarship. The note would be due and payable to the college according to its terms. When received by the college, they would have the unrestrained right to use it as they pleased, unless the plaintiff showed a valid contract limiting this right. This he has alleged but not established. The mere sale of scholarships, which the defendant, under the resolution of December 6, 1855, authorized to be made, would not, without more and without further authority from the college corporation, make the scholarship notes a perpetual trust fund, as claimed by the plaintiff. Neither this resolution nor the certificate of scholarship necessarily contemplate any such trust fund. On the face of these, we cannot say that more was contemplated than that the one party should pay $200, and, in consideration thereof, receive the promise of the other party (the college), executory in its character, to educate, free of tuition, and perpetually, one scholar, to be named by the holder of the certificate.

Because, in *point of law*, the resolution and certificate alone do not establish, and because, in *point of fact*, the evidence *aliunde* has not established any valid and binding contract on the part of the college, impressing a trust character upon the scholarship notes and fund, and because the defense of fraud is not, for reasons before given, available to the plaintiff in this proceeding, we are of the opinion that the decree below was correct, and must be

Affirmed.